**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANNY CHARLES LOVATO<br><br>Defendant. | **Crim. No. 23-436 (GMM)** |

**OPINION AND ORDER**

Pending before the Court is Defendant Danny Charles Lovato's ("Mr. Lovato") *Motion to Dismiss Count Two of the Superseding Indictment for Failure to State an Offense, or in the Alternative, as Multiplicitous* ("*Motion to Dismiss*"). (Docket No. 84). For the reasons stated herein, the *Motion to Dismiss* is **DENIED**.

**I.    BACKGROUND**

Mr. Lovato was indicted on November 29, 2023 for the sole count of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a).[1] (Docket No. 3). On October 3, 2024, a grand jury returned a *Superseding Indictment*, including as Count Two the commission of a crime of violence while failing to register as a

---

[1] Defendant's sex offender status arises from a 2003 California state conviction for the misdemeanor offense of sexual battery, which entails mandatory lifetime registration as a sex offender. (Docket No. 15 at 3). Mr. Lovato received a sentence of three years of probation for this offense. (Id.). At that time, Mr. Lovato had also been charged with – yet not convicted of – the felony offense of oral copulation by force or fear, with the aggravating circumstance of the victim being unconscious. (Id.). In 2007, Mr. Lovato's criminal conviction was expunged, albeit he continues to be required to register as a sex offender during the remainder of his lifespan. (Docket No. 93 at 2).

Crim. No. 23-436 (GMM)
Page -2-

sex offender, in violation of 18 U.S.C. § 2250(d). (Docket No. 41). Count Two is premised upon Mr. Lovato's criminal prosecution in the Commonwealth of Puerto Rico trial court for first-degree murder, in violation of P.R. Laws Ann. tit. 33, § 5142.

On July 12, 2024, the Federal Bureau of Prisons reported the results of a mental evaluation conducted on Mr. Lovato by forensic psychologists while in federal custody. (Docket No. 32). The results concluded that Mr. Lovato was sane at the time that the first-degree murder was allegedly committed, and that Mr. Lovato is competent to stand trial. (Id.). On November 24, 2025, notwithstanding the federal system's conclusion, the Commonwealth court dismissed Mr. Lovato's criminal prosecution for first-degree murder during his preliminary hearing,[2] on grounds that he "meets the minimum criteria for legal insanity."[3] (Docket No. 91-1 at 3).

Consequently, Mr. Lovato filed the instant *Motion to Dismiss* claiming that this Court lacks jurisdiction to address Count Two, because the Commonwealth's determination of legal insanity annuls the commission of a crime of violence, which is a requisite element

---

[2] A preliminary hearing in Puerto Rico state courts is an adversarial hearing held exclusively for felony charges to determine if there is probable cause to proceed to trial. Pueblo v. Andaluz Méndez, 143 D.P.R. 656, 661 (1997). Preliminary hearings are governed by Rule 23 of Puerto Rico Criminal Procedure. P.R. Laws. Ann. tit. 34, app. II.

[3] At the Commonwealth level, Mr. Lovato was also charged with attempted first-degree murder and two counts of possession of a blunt object or edged weapon. (Docket No. 15 at 3-4). These charges were similarly dismissed on grounds of insanity. (Docket No. 91-1).

of charged federal offense.[4] (Docket No. 84). As argued by the defense, Mr. Lovato's legal insanity as to the Commonwealth offense constitutes an acquittal which, pursuant to the Due Process and Double Jeopardy Clauses, bars the United States from litigating in federal court whether Mr. Lovato committed a crime of violence. (Id.); *see also* (Docket 95). In the alternative, Mr. Lovato also argues that Count Two is separately barred by the Double Jeopardy Clause, because it is duplicative of Count One. (Docket No. 84 at 16-18).

The United States opposes the dismissal of Count Two. It claims that the Commonwealth court's determination of legal insanity as to the Puerto Rico offenses does not bind this Court in regard to the federal offense, and that Mr. Lovato's double jeopardy contention is misplaced because the Commonwealth and federal charges are distinct, separate offenses that require proof of different elements. (Docket Nos. 93, 102).

## II.  LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Criminal Procedure enables a defendant to move for the dismissal of an indicted offense where the federal court lacks jurisdiction. Fed. R. Crim.

---

[4] On February 3, 2026 and February 10, 2026, Mr. Lovato informed the Court that a plea agreement had been accepted in principle. (Docket Nos. 83; 93 at 4). Mr. Lovato, nonetheless, filed his *Motion to Dismiss* after communicating his intent to plead guilty.

Crim. No. 23-436 (GMM)
Page -4-

P. 12(b)(2). This motion "may be made at any time while the case is pending." Id.

In evaluating a motion to dismiss, "courts take the facts alleged in the indictment as true, mindful that the question is not whether the [G]overnment has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense," United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (internal quotations omitted), and allow him to contest the charges "without fear of double jeopardy." United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012). Accordingly, motions to dismiss are not meant to be a litmus test of "the sufficiency of the evidence behind an indictment's allegations." United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011).

"Dismissing an indictment is an extraordinary step." United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000). "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." Whitehouse v. U.S. Dist. Ct. for Dist. of R.I., 53 F.3d 1349, 1360 (1st Cir. 1995).

**Crim. No. 23-436 (GMM)**
**Page -5-**

### III. DISCUSSION

Having reviewed the record and the law extensively on this matter, the Court must deny Mr. Lovato's *Motion to Dismiss* on multiple grounds. First, double jeopardy did not attach to the pretrial dismissal of the state offense. Second, under Puerto Rico law, a determination of insanity at a preliminary hearing is not final and therefore is not tantamount to an acquittal. Third, independent of Puerto Rico law, the Commonwealth court's determination did not resolve the sufficiency of the evidence or the factual elements of the offense, as required under federal law for a ruling to constitute an acquittal. Fourth, in any event, Puerto Rico's insanity standard employs a lower burden of proof than federal law requires. Fifth, the state and federal charges constitute distinct offenses. Sixth, the charging of Count One and Count Two does not involve multiple punishments for the same conduct. Seventh, and lastly, the doctrine of collateral estoppel does not bar federal prosecutors from relitigating the issue of insanity.

Before the Court proceeds, it must first revisit the statutory and constitutional factors that guide its analysis.

A.    Puerto Rico's Insanity Statute

Articles 38 and 40 of Puerto Rico's Penal Code – when read in conjunction – define an "insanity" defense by establishing that

"[n]o person shall be punished for an act that constitutes an offense" and "shall not be criminally responsible for criminal conduct if, at the time of such conduct as a result of a mental disease or defect, he or she lacked substantial capacity to appreciate the criminality of the conduct." P.R. Laws Ann. tit. 33, §§ 5061, 5063.[5]

In Hernández Ortega v. Tribunal Superior, the Puerto Rico Supreme Court extended the availability of the insanity defense to preliminary hearings. 102 D.P.R. 765 (P.R. 1974). Rules 240 and 241 of Puerto Rico Criminal Procedure codify this precedent. P.R. Laws. Ann. tit. 34, app. II. Accordingly, Rule 241 establishes that "[w]henever a defendant . . . cannot be prosecuted by reason of his/her mental incompetence [insanity], the court shall keep jurisdiction over said person and may order him/her to be admitted to an adequate institution for treatment" based upon an assessment of dangerousness. Id. Further, Rule 74 establishes the procedures that a defendant must follow to invoke insanity. Id.

B.    Double Jeopardy

Mr. Lovato argues that "Count Two must be dismissed because the Commonwealth court has already determined that [he] was not

---

[5] There are conflicting interpretations as to what source is Puerto Rico's insanity statute modeled after. Some academics suggest that Puerto Rico adopted the M'Naghten rule, see, e.g., Luis E. Chiesa-Aponte, Derecho Penal Sustantivo 256 (2nd ed. 2013), whereas others note the influence that the Model Penal Code has had on the statute's design, see, e.g., Dora Nevares-Muñiz, Código Penal de Puerto Rico 82-83 (4th ed. 2019).

Crim. No. 23-436 (GMM)
Page -7-

criminally responsible" of the crime of violence that underlies Count Two by way of insanity, (Docket No. 84 at 3), and that this "insanity dismissal is a final adjudication of non-criminal responsibility that binds the [United States] Government."[6] (Id. at 7) (citation modified). By Mr. Lovato's logic, the Commonwealth court's determination of insanity at the preliminary hearing triggers the constitutional protection against double jeopardy because "the prior proceeding resulted in a functional acquittal, and Puerto Rico and the United States constitute a single sovereign." (Docket. 97 at 6).

This logic, however, fails at numerous levels. The Court will address each of these concerns in turn.

1.   Jeopardy does not attach where criminal charges are dismissed during pretrial proceedings.

The Double Jeopardy Clause of the Fifth Amendment affords "three basic protections" to criminal defendants: "It protects against a second prosecution for the same offense after acquittal.

---

[6] "In determining whether a past conviction fits within the definition of a 'crime of violence,' we generally apply the 'categorical approach,' under which we examine the elements of the predicate crime and determine whether those elements are categorically the same as, or narrower than, the 'generic offense' described by the federal statute." Villanueva v. Holder, 784 F.3d 51, 54 (1st Cir. 2015). Here, however, Mr. Lovato waived arguing that first-degree murder is not a crime of violence. To the contrary: Mr. Lovato's double jeopardy contention hinges on the tacit assumption that first-degree murder indeed constitutes a crime of violence. Hence, a determination of insanity as to the former would extend – according to Mr. Lovato – to the annulment of the latter. In any case, "[c]ommonsense dictates that murder is a crime of violence." United States v. Candelario-Santana, 675 F. Supp. 3d 226, 237 (D.P.R. 2023); see also Rojas-Tapia v. United States, 458 F. Supp. 3d 111, 117 (D.P.R. 2020), aff'd, 130 F.4th 241 (1st Cir. 2025) (same).

Crim. No. 23-436 (GMM)
Page -8-

It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Ohio v. Johnson, 467 U.S. 493, 498 (1984) (citation modified); U.S. Const. amend. V, cl. 2.

"[J]eopardy attaches when a trial commences; that is, when a jury is sworn or empaneled or, in a bench trial, when the judge begins to hear evidence." United States v. Santiago-Colón, 917 F.3d 43, 55 (1st Cir. 2019) (citation modified); Willhauck v. Flanagan, 448 U.S. 1323, 1325-26 (1980).

As to the case at bar, jeopardy did not attach because the Commonwealth charges were dismissed at the preliminary hearing, and no jury was sworn nor trial evidence reviewed. *See* Santiago-Colón, 917 F.3d at 55. As such, Defendant's double jeopardy concerns are misplaced.

2.    The Puerto Rico Supreme Court has ruled that a determination of insanity at the Commonwealth court's preliminary hearing does not constitute an acquittal.

Mr. Lovato's assertion that his insanity determination at the Commonwealth level is equivalent to an acquittal also fails.

"It has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy." McElrath v. Georgia, 601 U.S. 87, 94 (2024) (citation modified). In this vein, in Pueblo v. Lebrón-Lebrón, the Puerto Rico Supreme Court explicitly rejected the proposition that a determination of

insanity at a preliminary hearing "is tantamount to an acquittal" on the grounds that these "findings made at the preliminary hearing are not final," but rather can be relitigated de novo in a second, subsequent preliminary hearing before a different judge.[7] 116 D.P.R. 855, 859-60 (P.R. 1986). Rules 23 and 241(i) of Puerto Rico Criminal Procedure codify this decision. P.R. Laws. An. tit. 34, app. II.

Hence, the Puerto Rico Supreme Court concludes in Lebrón-Lebrón that a determination of insanity at the preliminary hearing is "not final"; is not "tantamount to an acquittal"; and "renders inapplicable the rule on collateral estoppel." 116 D.P.R. at 859-60.[8] Therefore, Defendant's request for this Court to treat the Commonwealth's preliminary insanity determination as an acquittal for purposes of Double Jeopardy cannot stand.

---

[7] *Accord* Clark v. Arizona, 548 U.S. 735, 752 (2006) ("[I]t is clear that no particular formulation has evolved into a baseline for due process, and that the insanity rule, like the conceptualization of criminal offenses, is substantially open to state choice.").

[8] *Aff'd* Pueblo v. Lebrón-Lebrón, 121 D.P.R. 154 (P.R. 1988); *see also* Pueblo en Interés del Menor G.R.S., 149 D.P.R. 1, 24 n.28 (1999); Pueblo v. Cotto García, 205 D.P.R. 237, 257 (P.R. 2020).

Crim. No. 23-436 (GMM)
Page -10-

    3.    <u>The Commonwealth court's determination of insanity did not entail a finding about the Commonwealth prosecutors' sufficiency of the evidence or the factual elements of the state offense, as required by federal case law to be considered an acquittal.</u>

Mr. Lovato's posture is further diminished by the lack of substantive findings at the preliminary hearing regarding the elements of the charged Commonwealth offenses.

This Court has already identified that Defendant's insanity finding at the Commonwealth level does not constitute an acquittal. Yet the United States Supreme Court has clarified time and time again that to decide whether a determination of insanity constitutes an acquittal, "labels do not control our analysis in this context; rather, the substance of the ruling does." <u>McElrath</u>, 601 U.S. at 94 (citation modified).

To that end, "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action." <u>United States v. Martin Linen Supply Co.</u>, 430 U.S. 564, 571 (1977). Instead, it turns on "whether the ruling of the judge, whatever its label, actually represents a resolution . . .  of some or all of the factual elements of the offense charged." <u>Id.</u>; *see also* <u>Evans</u>, 568 U.S. at 322.

In particular, this Court must look into whether the determination of insanity "relates to the ultimate question of guilt or innocence," <u>United States v. Scott</u>, 437 U.S. 82, 98 n.11

Crim. No. 23-436 (GMM)
Page -11-

(1978) (citation modified), and whether the trial court has "acted on its view that the prosecution had failed to prove its case." Martinez v. Illinois, 572 U.S. 833, 842 (2014) (citations omitted); McElrath, 601 U.S. at 94 (An acquittal "encompass[es] any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense."). As such, this Court turns its attention not just to the label of the Commonwealth's insanity determination at the preliminary hearing, but also to the Commonwealth court's substantive findings or lack thereof.

As relevant here, a determination of insanity at either the Commonwealth or federal level "establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness." Jones v. United States, 463 U.S. 354, 363 (1983). "And to this day, the overwhelming majority of U.S. jurisdictions recognize insanity as an affirmative defense that excuses a defendant from criminal liability even where he was capable of forming the mens rea required for the offense." Kahler v. Kansas, 589 U.S. 271, 300 (2020) (Breyer, J., dissenting); id. at 284 (majority opinion) (similarly tracing the historical understanding of insanity as excusing criminal responsibility).

Puerto Rico's insanity status follows this logic, by stating that an insane defendant "shall not be criminally responsible for

Crim. No. 23-436 (GMM)
Page -12-

[his] criminal conduct." P.R. Laws Ann. tit. 33, §§ 5061, 5063. On its face, the statute recognizes that insanity applies in instances where a defendant engaged in "criminal conduct" that "constitutes an offense," id., yet the defendant is nonetheless excused from punishment due to his mental condition at the time of the offense.

Indeed, for insanity to apply, "[t]here is no question that [the defendant] committed the criminal acts charged." Foucha, 504 U.S. at 91 (Kennedy, J., dissenting). The application of the insanity defense merely means the defendant "should not be held morally responsible for the[] [criminal] acts" that he committed.[9] Kahler, 589 U.S. at 315 (Breyer, J., dissenting).

Hence, under Commonwealth law, "[a] verdict of not guilty by reason of insanity is neither equivalent nor comparable to a verdict of not guilty standing alone," id. at 94, because it necessarily accepts that the defendant committed the criminal act in order to hold that the Commonwealth will not hold him responsible for said act.

---

[9] Affirmative defenses that "exclude the culpability of the author [of a criminal offense] are called defenses or causes of excuse or exculpation." Luis E. Chiesa-Aponte, Derecho Penal Sustantivo, 88 Rev. Jur. U.P.R. 149, 162 (2019). Under Puerto Rico law, and as codified in the Puerto Rico Penal Code, "an example of a defense of exculpation [i.e., an excuse defense] is insanity." Id.; Luis E. Chiesa-Aponte, Derecho Penal Sustantivo 256 (2nd ed. 2013). "In general, insanity is an excuse for the commission of every crime, because the party has not the possession of . . . responsibility." Kahler, 589 U.S. at 284 (citations omitted).

Crim. No. 23-436 (GMM)
Page -13-

This Court, therefore, understands that, at some level, Mr. Lovato concedes having committed acts that may fall within the sphere of a criminal offense.[10] Yet, to properly understand the scope of the Commonwealth's findings at the preliminary hearing, this Court must also consider whether the Commonwealth prosecutors met their burden of proof as to Mr. Lovato's charged offense of first-degree murder. To conduct this inquiry, this Court looks into federal jurisprudence for guidance.

As to the sufficiency of the Commonwealth prosecutors' evidence for first-degree murder during the preliminary hearing, "an affirmative plea of legal insanity" does not "implicate the State's initial burden" of proving each element of the offense beyond a reasonable doubt. Foucha, 504 U.S. at 92 (Kennedy, J., dissenting). In fact, "the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required [] elements of the crime." Mullaney v. Wilbur, 421 U.S. 684, 706 (1975) (Rehnquist, J., concurring). Considering that "[t]he State's burden [of proof] is unaffected by an adjudication [of insanity] without trial," then a determination of insanity does not constitute a determination of

---

[10] See Kahler, 589 U.S. at 313 (2020) (Breyer, J., dissenting) (*citing* State v. Crenshaw, 98 Wash. 2d 789, 799 (1983)) ("[T]he vast majority of cases in which insanity is pleaded as a defense to criminal prosecutions involves acts which are universally recognized as morally wicked as well as illegal.").

innocence beyond a reasonable doubt. <u>Foucha</u>, 504 U.S. at 93 (Kennedy, J., dissenting).

In this vein, the Commonwealth's determination of insanity is not a ruling that the prosecution's proof was insufficient to establish whether Mr. Lovato committed the charged offense. *See, e.g.,* <u>Patterson v. New York</u>*,* 432 U.S. 197, 206 (1977).[11] In rendering its one-sentence determination of legal insanity, the Commonwealth trial court did not take into account the prosecution's sufficiency of the evidence, nor did it rule that Mr. Lovato enjoys actual innocence. Quite the opposite. The Commonwealth court reached a separate legal conclusion: notwithstanding the sufficiency of the evidence, Mr. Lovato cannot be punished.

Without evaluating the merits of the charged offense, the Commonwealth court narrowly ruled that – irrespective of whether Mr. Lovato committed the prohibited act – his mental infirmity at the commission of the offense exempts him from punishment. (Docket No. 91-1 at 3). Hence, the Commonwealth's determination of legal insanity falls short of being "unquestionably a ruling that the prosecution's proof is insufficient to establish criminal liability for an offense," nor does it relate to the factual

---

[11] *See* <u>Kahler v. Kansas</u>, 589 U.S. 271, 312 (2020) (Breyer, J., dissenting) ("Today, 45 States, the Federal Government, and the District of Columbia continue to recognize an insanity defense that retains some inquiry into the blameworthiness of the accused.").

Crim. No. 23-436 (GMM)
Page -15-

elements of the charged offense - as required for acquittal. McElrath, 601 U.S. at 94 (*citing* Evans, 568 U.S. at 318); *see also* Burks v. United States, 437 U.S. 1, 10 (1978).

    4.   Even if considered, the Commonwealth court's insanity determination was reached under a lower burden of proof than federal law requires.

Even if the Commonwealth had made some finding as to the sufficiency of the evidence, this Court would not be bound by it because Puerto Rico law requires a lower burden of proof to establish an insanity defense than what federal law allows. Under federal law, "[t]he defendant has the burden of proving the defense of insanity by clear and convincing evidence." 18 U.S.C. § 17. Under Puerto Rico's Rule 240(a) and (d) of Criminal Procedure, however, a defendant establishes insanity "by a preponderance of evidence." P.R. Laws. An. tit. 34, app. II.

Without a doubt, clear and convincing evidence is "more than preponderance of the evidence." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted). Given that the Commonwealth's determination of insanity is premised upon a lower standard than clear and convincing evidence, it does not meet the legal criteria that is required by federal law and, consequently, does not bind this Court.[12]

---

[12] The fact that Mr. Lovato has met a low standard (*i.e.,* preponderance of the evidence) at the Commonwealth forum does not necessarily entail the conclusion that he is wholly unable to meet a higher standard (*i.e.,* clear and convincing

Crim. No. 23-436 (GMM)
Page -16-

    5.    <u>The state and federal charges are distinct offenses and require proof of different elements.</u>

Mr. Lovato's double jeopardy argument similarly misses the mark, because the Commonwealth and federal charges do not pertain to the same offense. *See* <u>Brown v. Ohio</u>, 432 U.S. 161, 165 (1977); <u>Santiago-Colón</u>, 917 F.3d at 57.

"Successive prosecutions even by the same sovereign do not violate the double jeopardy principles if the second prosecution involved substantively different offenses." <u>United States v. Pérez-Pérez</u>, 72 F.3d 224, 226 (1st Cir. 1995). Under the applicable legal test, offenses are "different" for the purpose of double jeopardy where "each [offense] requires proof of an additional fact which the other does not." <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).

Defendant's claim fails under <u>Blockburger</u>, because the Commonwealth offense – first-degree murder - and the federal offense – committing a crime of violence while failing to register as a sex offender - have materially different elements.

The Puerto Rico charge requires proof that Mr. Lovato "kill[ed] [] a human being with malice aforethought" in a manner

---

evidence) at federal court. Nonetheless, the Court need not resolve that question on the second occasion to adjudicate an insanity defense to the federal charge itself. The Court notes only that the Federal Bureau of Prisons found Mr. Lovato sane at the time of the alleged offense and competent to stand trial. (Docket No. 32).

that is "willful and premeditated." P.R. Laws Ann. tit. 33, §§ 5141-42. Conversely, Count Two requires proof that Defendant was "required to register" as a sex offender; "knowingly fail[ed] to register"; and "committed a crime of violence." 18 U.S.C. §§ 2250(a), (d). Even if this Court examines - in light most favorable to Mr. Lovato - the argument that all of the elements that compose first-degree murder are subsided within Count Two's "crime of violence" element, Mr. Lovato's argument would still fail because the federal offense patently requires the proof of additional elements.

The state and federal charges "are not even arguably the same charge as each other." Pérez-Pérez, 72 F.3d at 226. "In sum, Blockburger disposes of the double jeopardy claim." Id.

6.    The application of Count Two's sentencing enhancement is not an impermissible "multiple punishment" for the same conduct.

Mr. Lovato argues in the alternative that Count One and Count Two of the *Superseding Indictment* punish him twice for the same offense. (Docket No. 84 at 16-18). The Court finds this argument equally unpersuasive.

As stated above, one of the Double Jeopardy Clause's functions is to protect against "multiple punishments" for the same conduct. Ohio v. Johnson, 467 U.S. at 498. "A prosecution is multiplicitous when the government charges a defendant twice for what is

essentially a single crime." United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012). This protection is triggered for multiple prosecutions in separate proceedings based on the same conduct, but not for multiple charges in the same proceeding. United States v. Medina-Lugo, 10 F.3d 805, 805 n.1 (1st Cir. 1993).

Here, the application of Count Two's sentence enhancement does not pose an issue of multiple punishments because, "[a]ssuming a defendant has been convicted under § 2250(a) [Count One], the only requirement for the § 2250(d) [Count Two] enhancement is that he also committed a crime of violence. That additional requirement is unrelated to the prior conviction that requires him to register." Id. This has been widely recognized. See, e.g., United States v. Morgan, 255 F. Supp. 3d 221, 232 (D.D.C. 2017) ("[A]n offender who is found guilty of failing to register under § 2250(a) is also subject to a sentencing enhancement of 5 to 30 years if he commits a crime of violence while failing to register."); c.f. United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2007) ("Multiple punishments for the same offense . . . are permissible if the legislature so intended."). As such, Mr. Lovato's multiplicity argument also falls short.

## C.    Collateral Estoppel

As a fall-back position, Mr. Lovato argues that "[i]n Sánchez Valle, the Supreme Court held that [] Puerto Rico and the federal

Crim. No. 23-436 (GMM)
Page -19-

government draw their power from the same ultimate source,"
therefore "the Puerto Rico insanity dismissal and the current
federal prosecution emanate from the same sovereign, and
collateral estoppel under Ashe applies." (Docket No. 84 at 14).
In other words, "Count Two is barred by collateral estoppel because
the Puerto Rico court's insanity dismissal necessarily determined
that [Defendant] lacked criminal responsibility for the acts
alleged as the predicate of Count Two." (Docket No. 84 at 10).
This argument similarly fails.

Collateral estoppel "means simply that when an issue of
ultimate fact has once been determined by a valid and final
judgment, that issue cannot again be litigated between the same
parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443
(1970). "[T]he doctrine of collateral estoppel applies in criminal
cases." Pérez-Pérez, 72 F.3d at 226. Importantly, in Commonwealth
of Puerto Rico v. Sánchez Valle, the United States Supreme Court
held that Puerto Rico and the United States draw from the same
sovereign source of prosecutorial authority, meaning that both are
barred from successively prosecuting someone for the same conduct
under analogous criminal statutes. 579 U.S. 59 (2016).

Higher courts have already put this argument to bed. As
previously discussed, in Lebrón-Lebrón the Puerto Rico Supreme
Court stated: "The fact that the findings made at the preliminary

hearing are not final renders inapplicable the rule on collateral estoppel laid down in Ashe v. Swenson." 116 D.P.R. at 860-61.

The First Circuit has also addressed – and settled - the Sánchez Valle argument raised by Mr. Lovato: "Sánchez Valle, which had nothing to do with collateral estoppel, and where the Supreme Court emphasized the narrowness of its holding, held that Puerto Rico and the United States are a single sovereign for purposes of the Double Jeopardy Clause because the source of authority of both prosecutorial powers derive from the same source." Santiago-Colón, 917 F.3d at 58. Thus, "what determines whether collateral estoppel is applicable is whether the party to be precluded from relitigating an issue decided in a previous litigation was either a party or in privity with a party to that prior litigation." Id. (internal quotation omitted).

For the United States to be in privity with Puerto Rico prosecutors in a Commonwealth criminal proceeding, "the non-party [United States] must substantially control or be represented by the party [Commonwealth prosecutors] so that the doctrine of collateral estoppel apply." Olson v. Fajardo-Vélez, 419 F. Supp. 2d 32, 44 (D.P.R. 2006); see Santiago-Colón, 917 F.3d at 47. "Where prosecutors from a state [here, Commonwealth] or federal jurisdiction are neither a party nor in privity with their

counterparts in the other jurisdiction's proceedings, such requirement is not satisfied." Olson, 419 F. Supp. at 44.

The question, here, is whether the Commonwealth prosecutors that previously litigated the matter of insanity in the local trial court constitute the "same parties" as the federal prosecutors that are currently litigating the same issue in front of this Court. Mr. Lovato, however, "makes no effort to adduce facts showing privity in this case between federal and Puerto Rico prosecutors, possibly because he thinks that his 'single sovereign' argument establishes an identity between the two governments, an argument [that the First Circuit] has previously rejected in Bonilla Romero itself." Pérez-Pérez, 72 F.3d at 226.

In Bonilla Romero, the First Circuit noted that the defendant "present[ed] no evidence whatsoever that federal prosecutors were, or should have been, involved in any way in the local prosecution. There is no indication they provided assistance or advice to the local authorities or at any time even discussed the matter." 836 F.2d 39, 44 (1st Cir. 1987). Likewise, here, "there is no evidence of record to the effect that Commonwealth authorities procured, initiated, assisted or oversaw the federal criminal prosecution. Nor is there evidence that the federal prosecutor was de facto representing the Commonwealth during the federal proceeding."

Crim. No. 23-436 (GMM)
Page -22-

Olson, 419 F. Supp. at 44; *see also* Santiago-Colón, 917 F.3d at 47.[13]

In fact, if the Commonwealth and the federal government were indeed in privity, then Mr. Lovato should have never been able to litigate the matter of insanity in the Puerto Rico forum on November 2025, (Docket No. 91-1), because this matter had already been adjudicated by federal authorities on July 2024 when the Court accepted the Bureau of Prisons' finding "that Mr. Lovato was sane at the time of the alleged offense." (Docket No. 32). Mr. Lovato's own actions, therefore, directly contradict – and undermine – his own legal contention.

Accordingly, without facts suggesting otherwise, the Court finds that the United States was not in privity to the Commonwealth court's insanity proceedings, and the collateral estoppel doctrine cannot be raised to preclude relitigating the matter of insanity in federal court.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Lovato's *Motion to Dismiss* at Docket No. 84.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on August 5, 2026.

---

[13] Although Bonilla Romero was decided prior to Sánchez Valle, the First Circuit since then has "f[ou]nd no sound reason to believe that the Bonilla Romero panel would change its collective mind in light of Sánchez Valle. Accordingly, [the First Circuit] conclude[s] that Bonilla Romero is still good law." Santiago-Colón, 917 F.3d at 58.